**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| ARNULFO FONSECA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Case No. 08-CV-0435-MJR-PMF** |
| | ) | |
| CHARLES DAVID NELSON, | ) | |
| Individually, and in his official capacity | ) | |
| as State's Attorney for Saline County, | ) | |
| KEITH BROWN, Individually and in | ) | |
| his capacity as Sheriff of Saline County, | ) | |
| KEN CLORE, MARK LEVAUGHN, | ) | |
| RANDY BUTLER, MIKE JONES, | ) | |
| BRAD NEAL, DAVID BLAZIER, | ) | |
| TODD FORT, STEVE SLOAN, | ) | |
| MONA NELSON, SALINE COUNTY, | ) | |
| SHERIFF'S OFFICE OF SALINE | ) | |
| COUNTY, STATE'S ATTORNEY'S | ) | |
| OFFICE OF SALINE COUNTY, and | ) | |
| VILLAGE OF CARRIER MILLS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

**A. Introduction**

On June 12, 2008, Fonseca filed this action alleging causes of action under federal and Illinois state law (Doc. 2). Fonseca's claims relate to his April 2008 Illinois state murder trial, in which a jury found him not guilty. Fonseca's complaint includes nine counts against Defendant Charles David Nelson, the State's Attorney who charged and prosecuted him. In Counts 1 through 5, which are brought under 42 U.S.C. § 1983, Fonseca alleges that Nelson violated his Fourth Amendment rights by assisting in his false arrest (Count 1) and violated his Fourteenth Amendment due process rights by assisting in a malicious prosecution (Count 2), fabricating evidence (Count 3), prosecuting Fonseca without probable cause (Count 4), and interfering with Fonseca's right to

interstate travel (Count 5). As for Fonseca's Illinois tort claims, he alleges that Nelson carried out a malicious prosecution (Count 6), intentionally inflicted emotional distress (Count 7), defamed him in the press (Count 8), and conspired with others to "convict him of charges that are unsupported by the evidence" (Doc. 2, Ct. 9, ¶ 31).[1]

On August 25, 2008, Nelson filed a motion to dismiss (Doc. 33) arguing that he is entitled to absolute prosecutorial immunity. In the alternative, he argues that an absolute privilege shields him from claims related to statements he made to the media, that the Eleventh Amendment protects him from claims against him in his official capacity, that Fonseca fails to state a cause of action for civil conspiracy, that Fonseca's due process rights were not violated in the state proceedings, and that violations of certain portions of the Illinois Constitution are not actionable for damages.

Having fully reviewed the parties' filings, the Court hereby **GRANTS IN PART AND DENIES IN PART** Nelson's motion to dismiss (Doc. 33).[2]

### B. Standards Governing a Motion to Dismiss

Dismissal is warranted under **Rule 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE** if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. V. Twombly*, **--U.S.--, 127 S.Ct. 1955, 1965 (2007);** *EEOC v. Concentra Health Services, Inc.*, **496 F.3d 773, 776 (7th Cir. 2007).** In making this assessment,

---

[1] Count 10 is a claim for indemnification against the Village of Carrier Mills, the Office of the Sheriff of Saline County, and Saline County. Count 11 is a respondeat superior claim against the same Defendants.

[2] On December 31, 2008, without seeking leave from the Court to do so, Fonseca filed a supplement to his response (Doc. 69). This document contains information not included in the complaint. Accordingly, it would be improper to consider this information in ruling on the instant motion to dismiss. Accordingly, the Court's review is limited to documents filed at docket numbers 33, 34, 42, and 43.

the District Court accepts as true all well-pled factual allegations and draws all reasonable inferences in plaintiff's favor. ***Tricontinental Industries, Inc., Ltd. v. PriceWaterhouseCoopers, LLP***, 475 **F.3d 824, 833 (7th Cir.),** ***cert. denied***, **128 S. Ct. 357 (2007);** ***Marshall v. Knight***, **445 F.3d 965, 969 (7th Cir. 2006);** ***Corcoran v. Chicago Park District***, **875 F.2d 609, 611 (7th Cir. 1989).**

## C.  Factual Background

The factual background as taken from Fonseca's complaint is as follows.  Fonseca took Ashleigh Miller to the hospital on May 28, 2007 "after she fell out of the car he was driving" in Saline County, Illinois (Doc. 2, ¶ 21).  Miller died on June 6, 2007.  An investigation ensued, and Fonseca was initially charged and arrested for aggravated DUI, aggravated driving with a revoked license, obstructing justice, and leaving the scene of and failing to report a personal injury accident. Nelson ultimately chose to drop the initial charges.

On June 13, 2007, Fonseca was charged with two counts of first degree murder and an arrest warrant was issued.  That same day Fonseca voluntarily turned himself in.  Fonseca was held on a one-million dollar bond, which he could not meet, and thus remained in jail until his trial in April 2008.  On June 19, 2007, Nelson made a comment to the Southern Illinoisan, a local newspaper, that he "wouldn't have filed the murder charges 'if I didn't think I had a case'" (Doc. 2, ¶ 26).

Fonseca appeared before Judge Walden E. Morris on July 5, 2007 for a preliminary hearing to determine whether the State had probable cause to charge Fonseca with two counts of murder.  A nurse and two police officers testified and provided possible medical reasons for Miller's injuries and subsequent death, but none testified that she had been beaten.  Nonetheless, Judge Morris determined that probable cause existed to support the murder charges.

In April 2008, Fonseca went to trial.  Fonseca claims that one of the State's witnesses

was coerced into testifying against him, and that the rest of the testimony was speculative, biased, and unfounded. Trial concluded on April 8, 2008, and the jury found Fonseca not guilty. Upon leaving the courthouse, Fonseca was required to wear a bulletproof vest, as the publicity surrounding the case had resulted in threats that Fonseca might be killed if acquitted. Fonseca claims that this publicity was the result of statements made by Nelson and law enforcement to the press, though he fails to specifically identify these statements.

### D.  Absolute Prosecutorial Immunity

As noted above, Nelson's primary argument is that all claims against him must be dismissed because he is entitled to absolute prosecutorial immunity. Fonseca's first five counts are § 1983 claims alleging various violations of Fonseca's federal constitutional rights. **Section 1983** provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The Supreme Court has explained that § 1983 does not "abrogate immunities 'well grounded in history and reason.'" ***Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993) (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)).** Indeed, under certain circumstances, government officials may enjoy absolute or qualified immunity. ***Id.* at 268–69.**

The official claiming the protection of absolute immunity bears the burden of showing that the function involved in the underlying conduct justifies the immunity. ***Burns v. Reed*, 500 U.S. 478, 486 (1991).** In determining whether absolute immunity applies in a given situation, the Court considers "the nature of the function performed, not the identity of the actor who

performed it." ***Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) (quoting *Forrester v. White*, 484 U.S.219, 229 (1988)).** Stated another way, the focus is on the official's conduct, "not on the harm that the conduct may have caused or the question whether it was lawful." ***Buckley*, 509 U.S. at 271.**

The Supreme Court has identified a narrow range of prosecutorial functions wherein absolute immunity applies.[3] As a general rule, prosecutors are absolutely immune from liability for conduct "in initiating a prosecution and in presenting the State's case" to the extent that such conduct is "intimately associated with the judicial phase of the criminal process." ***Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976).** A prosecutor is entitled to absolute immunity even for duties undertaken outside the courtroom in preparation for initiating judicial proceedings, so long as they are done in his role as an advocate for the State. ***See Buckley*, 509 U.S. at 272.**

However, "the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." ***Buckley*, 509 U.S. at 273.** Indeed, prosecutor is not entitled to qualified immunity when his functions involve administrative duties and investigatory functions unrelated to an advocate's preparation for the initiation of a prosecution or for judicial proceedings. ***Imbler*, 424 U.S. at 431, n.33; *Buckley*, 509 U.S. at 273 (explaining that absolute immunity does not shield a prosecutor from liability "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer").**

---

[3] Throughout his response, Fonseca makes the unsupported claim that "[w]ithout sovereign immunity, there cannot be absolute or qualified immunity for a government actor." He then states that Eleventh Amendment sovereign immunity does not apply to the circumstances in this case, so absolute immunity cannot shield Nelson from liability. Aside from the fact that Fonseca fails to cite any support for this theory, the Court notes that Fonseca's theory is wrong. The caselaw is clear that absolute immunity for prosecutors emanates from the common law's recognition of quasi-judicial immunity for officials performing certain "special functions." ***Buckley*, 509 U.S. at 268–69; *see Imbler*, 424 U.S. at 421–24.** In other words, Eleventh Amendment sovereign immunity is not a necessary component for the application of absolute prosecutorial immunity as Fonseca contends.

In addressing whether Nelson is entitled to absolute immunity for any of the conduct alleged by Fonseca, it is useful to look at each count separately.

## 1. Count 1: § 1983 Action for False Arrest/Imprisonment

Count 1 alleges that Nelson violated Fonseca's Fourth Amendment rights by falsely arresting and imprisoning him. The factual basis of this claim, according to Fonseca, is that Nelson wrongly charged him with murder despite the lack of probable cause to do so. Additionally, Fonseca argues that by charging him with a severe crime, Nelson ensured a high bail that Fonseca could not meet, leaving him imprisoned through the conclusion of his trial.

As already explained above, prosecutors are absolutely immune from liability for conduct "in initiating a prosecution and in presenting the State's case." *Imbler*, 424 U.S. at 431. Clearly, a prosecutor acting in the function of charging a suspect with a crime and subsequently advocating a high bond before a court falls within the *Imbler* rubric. Absolute immunity protects Nelson from liability for these activities because such conduct is "intimately associated with the judicial phase of the criminal process." *Id.* at 430.

Fonseca argues that absolute immunity does not protect Nelson because he lacked probable cause to initiate the charges in the first place. According to Fonseca, lack of probable cause compels a finding that Nelson was not acting as an advocate for the State. To support this contention, Fonseca quotes language from *Buckley* that "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." 509 U.S. at 274. However, Fonseca stretches the Court's application of the *Imbler* test. The language Fonseca quotes is preceded by an explanation of the facts of that case, which involved police investigation at the crime scene during the period before they even convened a grand jury. *Id.* Indeed, in the footnote following the language at issue, the Court indicates that "a prosecutor would

be entitled to absolute immunity for the malicious prosecution of someone whom he lacked probable cause to indict." *Id.* **at n.5.**

Again, this Court's focus must be on the prosecutorial function being undertaken. Here, that function is Nelson's representation of the State in conducting a probable cause hearing. In **Kalina**, the Supreme Court explained that a prosecutor's function can be properly characterized as advocacy "for her drafting of the certification [for determination of probable cause], her determination that the evidence was sufficiently strong to justify a probable-cause finding, her decision to file charges, and her presentation of the information and the motion to the court." **522 U.S. at 130.** And in **Burns**, the Supreme Court found that absolute immunity applied where the prosecutor participated in a probable cause hearing aimed at obtaining a search warrant, despite the allegation that the prosecutor suborned perjury at the hearing. **500 U.S. at 481–83.** In analyzing these circumstances, the Court stated:

> The prosecutor's actions at issue here—appearing before a judge and presenting evidence in support of a motion for a search warrant—clearly involve the prosecutor's "role as advocate for the State," rather than his role as "administrator or investigative officer," the protection for which we reserved judgment in *Imbler*. . . . Moreover, since the issuance of a search warrant is unquestionably a judicial act . . . appearing at a probable-cause hearing is "intimately associated with the judicial phase of the criminal process." It is also connected with the initiation and conduct of a prosecution, particularly where the hearing occurs after arrest, as was the case here.

*Id.* **at 491–92 (citations omitted).** The same general analysis applies to the probable cause hearing here. The hearing was unquestionably "connected with the initiation and conduct of a prosecution."

In his response, Fonseca also argues that Nelson was "involved in the investigation and fabrication of evidence prior to the arrest" (Doc. 42, p. 7). However, a thorough review of the complaint reveals no allegations that Nelson engaged in any such conduct prior to Fonseca's

voluntary surrender on June 13, 2007—which is also the day Fonseca was charged.  In fact, the only allegation of fabrication of evidence in the complaint pertains to testimony offered at trial via "the coerced testimony of a jailhouse snitch" (Doc. 2, ¶ 28).  There is no indication that this alleged fabrication is in any way related to the false arrest claim in Count 1.[4]

As a result, the Court finds that Nelson has met his burden of showing that absolute prosecutorial immunity protects him from the allegations in Count 1.

## 2.  Count 2: § 1983 Action for Malicious Prosecution

Count 2 alleges that Nelson violated Fonseca's Fourteenth Amendment due process rights by maliciously prosecuting him.  This count relies on the same general factual allegations as Count 1, though Fonseca also claims that Nelson exhibited malice in that his comments to the Southern Illinoisan were intended to taint the jury pool.

The reasoning applied in Count 1 also applies here.  The analysis set forth in ***Imbler*** provides that prosecutors are afforded the same absolute immunity in § 1983 actions for malicious prosecution as they were at common law.  **424 U.S. at 421–24;** ***see Buckley*****, 509 U.S. at 274, n.5 ("The reason that we grant [absolute immunity] for the latter function (malicious prosecution) is that we have found a common-law tradition of immunity for a prosecutor's decision to bring an indictment, whether he has probable cause or not.");** ***see Spiegel v. Rabinovitz*****, 121 F.3d 251, 257 (7th Cir. 1997) ("a prosecutor is entitled to absolute immunity for his malicious prosecution of someone whom he lacked probable cause to indict.").**  The function of charging

---

[4]  Fonseca half-heartedly presses another argument against the application of absolute immunity.  He suggests that the Supreme Court's justification for its absolute immunity doctrine is "faulty and in question" (Doc. 42, p. 2).  This argument is without merit.  Where Supreme Court precedent controls an issue, this Court is bound to apply it.  Fonseca's suggestion that this Court should simply brush aside Supreme Court rulings is entirely without merit.

a suspect with a crime, advocating a particular amount for bail, and participation in a probable cause hearing are clearly related to the initiation of a prosecution and the presentation of the State's case—the ***Imbler*** standard for establishing absolute immunity.

Accordingly, the Court finds that Nelson has met his burden of showing that absolute prosecutorial immunity protects him from the allegations in Count 2.

### 3.  Count 3: § 1983 Action for Fabrication and Influence

Count 3 alleges that Nelson violated Fonseca's Fourteenth Amendment due process rights by fabrication and influence.  Here, Fonseca alleges that Nelson's "statements to the media indicat[ed] that the evidence supported [Fonseca's] guilt when it did not" (Doc. 2, Ct. 3, ¶ 32). Fonseca further alleges that these statements were made with the intent to poison the jury pool. Fonseca also claims that Nelson unsuccessfully attempted to obtain false testimony from various witnesses, and that Nelson succeeded in convincing Cecil Gulley "to act as a jailhouse snitch and falsely claim that [Fonseca] confessed to using brass knuckles to beat up Ms. Miller" (Doc. 2, Ct. 3, ¶ 32).  In response to these allegations, Nelson again claims that he is absolutely immune from suit.  With respect to the allegation that Nelson was involved in the attempted and actual fabrication of witness testimony, the Court finds that Nelson is entitled to absolute immunity.

In ***Imbler***, the defendant was accused of using false testimony and hiding exculpatory evidence.  In ***Burns***, the plaintiff alleged that at the probable cause hearing, the prosecutor suborned perjury.  Nonetheless, the Court determined that the prosecutor in each case was entitled to absolute immunity with respect to these actions.[5]

Certain "duties of the prosecutor in his role as advocate for the State involve actions

---

[5]  However, the prosecutor in ***Burns*** was not entitled to absolute immunity when giving legal advice to police officers regarding the case.

. . . apart from the courtroom." ***Imbler*, 424 U.S. at 431 n.33.** Such advocacy includes the "obtaining, reviewing, and evaluating of evidence" that is required in order to prepare for trial. ***Id.*; *see also id.* at 431 n.32 (noting that "effort[s] to control the presentation of [a] witness' testimony [is] a task fairly within his function as an advocate.").** Additionally, ***Buckley*** sheds further light on the line draw between the prosecutor's function as investigator, which does not enjoy absolute immunity, versus his function as advocate:

> There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand.

**509 U.S. at 273.**

As despicable as the procurement of false testimony is, a prosecutor is absolutely immune where that conduct occurs in the course of his trial preparation, as opposed to circumstances where it is undertaken in a merely investigatory capacity. Here, the nature and timing of the alleged fabrication of evidence supports the conclusion that Nelson's alleged misconduct was associated with the judicial phase of the proceedings. The complaint alleges that Nelson's attempt to convince Caleb Miller and Erik Burtis to falsely testify, and his coercion of Cecil Gulley into falsely testifying that Fonseca confessed to beating Miller occurred long after criminal proceedings had been initiated and while Nelson was preparing for trial. These circumstances are unlike those in ***Buckley***, where the prosecutors' fabrication of physical evidence occurred before the initiation of criminal proceedings and without a determination that there was probable cause to arrest the suspect. ***Id.* at 274.** In light of these considerations, the Court finds that Nelson is entitled to absolute immunity with respect to the allegation that he participated in the fabrication of witness testimony.

However, the Court cannot find that Nelson has met his burden of showing that

absolute immunity applies to any statements Nelson made to the media. The caselaw is clear that "[c]omments to the media have no functional tie to the judicial process just because they are made by a prosecutor." ***Buckley*, 509 U.S. at 277.** As a result, Nelson is not entitled to absolute immunity for such statements.

Accordingly, the Court finds that Nelson is entitled to absolute immunity for the allegations that he fabricated witness testimony, but he has not met his burden of showing that absolute prosecutorial immunity protects him from the allegations relating to media statements in Count 3.

## 4. Count 4: § 1983 Action for Lack of Probable Cause

In Count 4, Fonseca alleges that Nelson violated his Fourteenth Amendment due process rights by conducting an inadequate probable cause hearing. For reasons already explained above, it should be clear that Nelson is absolutely immune from this claim. Nelson's participation as an advocate for the State in the probable cause hearing constitutes conduct that is clearly "intimately associated with the judicial phase of the criminal process." ***Imbler*, 424 U.S. at 430.** The Court's earlier discussion sufficiently explains why absolute immunity applies in this instance. ***Supra* section D(1); *see Burns*, 500 U.S. at 491–92.**

Accordingly, the Court finds that Nelson has met his burden of showing that absolute prosecutorial immunity protects him from the allegations in Count 4.

## 5. Count 5: § 1983 Action for Violation of the Right to Interstate Travel

Counts 5 alleges that the finding of probable cause for the murder charges in addition to the high bail in Fonseca's case resulted in prolonged pre-trial incarceration and violated his Fourteenth Amendment right to interstate travel. For reasons already thoroughly explained, Nelson enjoys absolute immunity for his participation in charging Fonseca with murder, participating in the

probable cause hearing, and advocating the State's position that Fonseca be given a high bond. *Supra* **section D(1).** Each of these functions involve the prosecutor's duty "in initiating a prosecution and in presenting the State's case." *Imbler*, **424 U.S. at 431.** The Court need not repeat its analysis.

Accordingly, the Court finds that Nelson has met his burden of showing that absolute prosecutorial immunity protects him from the allegations in Count 5.

**6.  Count 6: State Law Claim for Malicious Prosecution**

In Count 6, Fonseca raises a claim for malicious prosecution under Illinois law.  As he did with his federal claim of malicious prosecution in Count 2, Fonseca argues that Nelson is liable under this theory because he wrongfully charged Fonseca with murder despite the lack of probable cause.

Illinois courts apply the same principles in determining whether absolute immunity protects a prosecutor from liability for state law claims.  *White v. City of Chicago*, **861 N.E.2d 1083, 1088–90 (Ill. App. Ct. 2006) (discussing and applying** *Imbler*, *Burns*, *Buckley*, **and** *Kalina*).  The Court has already explained that prosecutors enjoy absolute prosecutorial immunity when faced with an action for malicious prosecution.  *Supra* **section D(2);** *see Imbler*, **424 U.S. at 421–24.** The fact that the functions of charging a crime, advocating bail, and participating in a probable cause hearing involve the initiation of a prosecution and the presentation of the State's case is enough to establish that Nelson is absolutely immune from Fonseca's state law malicious prosecution claim.[6]

---

[6] With respect to the state law claims, Fonseca cites **705 ILCS 505/8** for the proposition that Illinois statutory law negates Nelson's argument for absolute immunity.  However, this statute merely places certain claims against the State in the exclusive jurisdiction of the Illinois Court of Claims.  In short, it is irrelevant to the question of absolute immunity, though, as explained below, the statute does relate to the question of whether Illinois has waived its sovereign immunity.

Accordingly, the Court finds that Nelson has met his burden of showing that absolute prosecutorial immunity protects him from the allegations in Count 6.

## 7. Count 7: State Law Claim for Intentional Infliction of Emotional Distress

In Count 7, Fonseca raises a claim under Illinois law that Nelson intentionally inflicted emotional distress by prosecuting him for murder, trying to influence the jury pool via false statements to the media, lying under oath about his relationship with a witness, and coercing witnesses to falsely testify. Fonseca also claims that Nelson inflicted emotional distress by charging him with murder, participating in a probable cause hearing without sufficient evidence, and setting bail that Fonseca could not meet.

The Court has explained why Nelson is entitled to absolute immunity for conduct related to filing charges, participating in the probable cause hearing, advocating a position on Fonseca's bail, and attempting to or actually fabricating witness testimony. ***Supra* sections D(1), (3).** Nelson is entitled to absolute immunity for each of these functions under the Court's earlier analyses. Therefore, they cannot serve as bases for Fonseca's intentional infliction of emotional distress claim.

On the other hand, the Court has explained that Nelson is not entitled to absolute immunity with respect to any statements he made to the media. "Comments to the media have no functional tie to the judicial process just because they are made by a prosecutor." ***Buckley*, 509 U.S. at 277.**

Finally, Fonseca alleges that Nelson inflicted emotional distress by lying under oath about his relationship with witness Kim Downing, whom Fonseca alleges previously dated Nelson (Doc. 2, Ct. 7, ¶ 31). Nelson defends against this allegation by arguing that committing perjury is not actionable as a tort in Illinois. While this is true, Fonseca's allegation of perjury serves only as

a basis for his emotional distress claim—it is not pled as an independent tort claim.[7]

In any case, "[t]estifying about facts is the function of the witness, not of the lawyer. . . . Even when the person who makes the constitutionally required 'Oath or affirmation' is a lawyer, the only function that she performs in giving sworn testimony is that of a witness." *Kalina*, 522 U.S. at 130–31. In light of all of this, the Court finds that Nelson fails to meet his burden of showing that he is entitled to absolute immunity with respect to the allegation that he lied under oath.

Accordingly, the Court finds that Nelson has met his burden of showing that absolute prosecutorial immunity protects him from all of the allegations in Count 7, except those related to his statements to the media and lying under oath.

### 8. Count 8: State Law Claim for Defamation

Count 8 alleges a claim for defamation under Illinois law. Fonseca claims that Nelson made defamatory statements regarding Fonseca's guilt to the Southern Illinoisan. For reasons already explained, Nelson is not entitled to absolute immunity with respect to such comments. *Supra* section D(3); *Buckley*, 509 U.S. at 277.

Accordingly, the Court finds that Nelson has not met his burden of showing that absolute prosecutorial immunity protects him from the allegations in Count 8.

### 9. Count 9: State Law Claim for Conspiracy

Finally, Count 9 is an Illinois state law claim for civil conspiracy. Fonseca alleges that Nelson, along with the other defendants in this case, conspired to convict him of trumped up murder charges. In support of this count, Fonseca claims that the whole of the Defendants' conduct

---

[7] Whether or not this factual allegation is of a sufficient nature to constitute an actionable basis for an emotional distress claim is not a matter that Nelson has specifically addressed, and the Court therefore need not rule on that issue at this time.

indicates their agreement "to convict him of charges that were unsupported by the evidence" (Doc. 2, Ct. 9, ¶ 31). In other words, Fonseca claims that Nelson and the other Defendants were involved in a conspiracy to maliciously prosecute him.

Nelson is absolutely immune from this claim to the same extent that he is immune from liability for the underlying conduct that serves as its factual basis. The Court agrees that Fonseca cannot state such a conspiracy claim against Nelson, because he is absolutely immune from the object of the conspiracy: malicious prosecution. *Supra* **sections D(2), (6).**

Accordingly, the Court finds that Nelson has met his burden of showing that absolute prosecutorial immunity protects him from the allegations in Count 9.

### E. Absolutely Privileged Communications

The remaining claims in Counts 3, 7, and 8 each include allegations that Nelson made false statements about Fonseca to the media. Nelson argues that these statements he made to the media are privileged under Illinois law and are therefore non-actionable. Under Illinois law, the absolute privilege for communications is an affirmative defense. *Harris v. News-Sun*, **646 N.E.2d 8, 10 (Ill. App. Ct. 1995); *Geick v. Kay*, 603 N.E.2d 121, 127 (Ill. App. Ct. 1992).** Federal notice pleading rules do not require the plaintiff to anticipate or overcome affirmative defenses, and thus, resolution of an affirmative defense is not appropriate in a motion to dismiss unless "the plaintiff effectively pleads himself out of court by alleging facts that are sufficient to establish the defense." *Richards v. Kleinhubert*, **263 Fed.Appx. 493, 495 (7th Cir. 2008) (citing *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006) and FED.R.CIV.P. 8)).**

Courts have recognized that certain statements made by governmental officials may be protected by the doctrine of absolute privilege. "An absolutely privileged communication is one in respect of which, by reason of the occasion on which or the matter in reference to which it is

made, no remedy can be had in a civil action." **Geick, 603 N.E.2d at 127.** As with the doctrine of absolute prosecutorial immunity, the determination focuses on the duties and function of the official rather than his rank. The Supreme Court explained in **Barr v. Matteo** that

> [i]t is not the title of his office but the duties with which the particular officer sought to be made to respond in damages is entrusted . . . which must provide the guide in delineating the scope of the rule which clothes the official acts of the executive officer with immunity from civil defamation suits.

**360 U.S. 564, 572–74 (1959).** As a result, to determine whether a particular communication is privileged, the Court must determine "whether the statements made were reasonably related to [the official's] duties." **Geick, 603 N.E.2d at 127–28.**

In the cases cited by Nelson, courts have examined the factual nature of the official's duties in relation to the communication. For instance, in **Harris**, the absolute privilege extended to a police officer's statements to the press because the record before the court indicated that he was an official police spokesperson, which required him to speak to the media regarding ongoing investigations. **646 N.E.2d at 11–12.** In other cases, the nature of the duties with respect to the alleged defamatory statements are clear on the face of the complaint. In **Williams v. Fischer**, a coroner's statements regarding an individual's cause of death on a death certificate were clearly protected because they were "made within the scope of his official duties." **581 N.E.2d 744, 745 (Ill. App. Ct. 1991).** Additionally, in **Morton v. Hartigan**, the court found that letters and comments criticizing the job performance of an Assistant Attorney General by his superiors to others in the chain of command were privileged because such evaluations were a necessary component of the supervisor's duties. **495 N.E.2d 1159, 1165 (Ill. App. Ct. 1986).**

Unlike statements by a coroner on a death certificate or employee evaluations by supervisors, the fact that a prosecutor made statements to the media about the strength of a case does

not in and of itself indicate that privilege should attach here. Though the doctrine of absolute privilege differs from the doctrine of absolute prosecutorial immunity, the Court's conclusion is further supported by the Supreme Court's statement in *Buckley* that "[c]omments to the media have no functional tie to the judicial process just because they are made by a prosecutor." **509 U.S. at 277.**

Additionally, the complaint does not reveal enough factual information about Nelson's duties for the Court to determine whether privilege applies. Indeed, Fonseca was not required to include such factual allegations in anticipation of Nelson's affirmative defense. As a result, the issue before the Court requires additional facts not appropriate for resolution in a motion to dismiss.

Accordingly, the Court finds that Nelson has failed to establish that the communications in question are protected by an absolute privilege.

### F. Eleventh Amendment Sovereign Immunity

Next, Nelson asks this Court to dismiss all claims against him in his official capacity pursuant to the Eleventh Amendment. The Eleventh Amendment recognizes that each state is a sovereign entity, and "it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without consent." *Hans v. Louisiana*, **134 U.S. 1, 13 (1890).** By its express terms, the Eleventh Amendment bars federal courts from hearing suits against a state brought by citizens of any other state. **U.S. CONST. AMEND. XI.**[8] However, the United States Supreme Court has consistently held that unconsenting states are immune from suits brought in federal court by their

---

[8] The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

own citizens, as well as those brought by citizens of other states. *See Ameritech Corp. v. McCann*, **297 F.3d 583, 585 (7th Cir. 2002) (citing *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)).**

Here, Fonseca is suing Nelson in both his official and individual capacities. Generally, "[f]ederal suits against state officials in their official capacities are barred by the Eleventh Amendment." *Brokaw v. Mercer County*, **235 F.3d 1000, 1009 (7th Cir. 2000).** However, there are narrow circumstances in which a suit can proceed against a state, its agencies, or officials. For instance, a state can waive the protections of the Eleventh Amendment and consent to be sued in federal court. *Ameritech Corp.*, **297 F.3d at 585.** Additionally, the United States Congress can use its enforcement powers under the Fourteenth Amendment to abrogate a state's Eleventh Amendment immunity. *Id.* Furthermore, a suit for prospective injunctive relief (though not money damages) may proceed against state officials in limited circumstances, as outlined in *Ex Parte Young*, **209 U.S. 124 (1908).** *See Ameritech*, **297 F.3d at 585.** Finally, a suit for money damages may proceed against a state official sued in his individual capacity (as opposed to his official capacity) for wrongful conduct attributable to the official himself, "so long as the relief is sought, not from the state treasury but from the officer personally." *Alden v. Maine*, **527 U.S. 706, 757 (1999).**

It is well-established that Congress's enactment of § 1983 did not "override the traditional sovereign immunity of the States." *Quern v. Jordan*, **440 U.S. 334, 341 (1979).** *Accord Ryan v. Illinois Dept. of Children and Family Services*, **185 F.3d 751, 758 (7th Cir. 1999);** *Kroll v. Board of Trustees of University of Illinois*, **934 F.3d 904, 909 (7th Cir. 1991),** *cert. denied*, **502 U.S. 941 (1991).** Moreover, there is no indication that the State of Illinois has waived its sovereign immunity with respect to such claims. Accordingly, Count 3, which is the only remaining § 1983 claim against Nelson, must be dismissed insofar as it is brought against Nelson in his official capacity.

Fonseca's remaining state law claims against Nelson in his official capacity (Counts 7 and 8) can survive only if Illinois has waived sovereign immunity with respect to Fonseca's particular claims. While the Eleventh Amendment does not bar federal jurisdiction over all state-law causes of action, it does bind federal courts to apply state rules of immunity where state-law causes of action are alleged. ***Magdziak v. Byrd*, 96 F.3d 1045, 1048 (7th Cir. 1996).** The Illinois State Lawsuit Immunity Act, **745 ILCS 5/1**, provides that "the State of Illinois shall not be made a defendant or party in any court," except as provided by certain Acts, including the Illinois Court of Claims Act, **705 ILCS 505/8.**[9] Fonseca claims that it is the Court of Claims Act that serves as the State's waiver of sovereign immunity for the claims in this case. It provides, in part, that the Court of Claims "shall have exclusive jurisdiction to hear and determine . . . [a]ll claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit . . . ." **705 ILCS 505/8(d).**

While Fonseca's tort claims for defamation and intentional infliction of emotional distress could be brought against a non-governmental party, it is clear that any such claim against the State falls within the exclusive jurisdiction of the Illinois Court of Claims. In other words, the State has only waived its sovereign immunity insofar as it consents to suit in its venue of choice, the Court of Claims—not federal court. Therefore, Fonseca's claims against Nelson in his official capacity, which are essentially claims against the State, can only be raised in the Court of Claims.[10]

---

[9] Additionally, **745 ILCS 5/1** permits actions against the State as provided in the Illinois Public Labor Relations Act, the State Officials and Employees Ethics Act, and the Clean Coal FutureGen for Illinois Act. These Acts have no relevance to this case.

[10] Note that this analysis does not affect Fonseca's claims against Nelson in his individual capacity. In ***Magdziak***, the Seventh Circuit explained that even though **745 ILCS 5/1** does not specifically address actions against officials in their individual capacity, the Illinois Supreme Court has determined that "state employees may in some instances be entitled to sovereign immunity, and if so are insulated from suit outside the Court of Claims. Such

Accordingly, the Court finds that pursuant to the Eleventh Amendment, Fonseca's remaining claims against Nelson in his official capacity in Counts 3, 7, and 8 must be dismissed.

### G.  Viability of Fonseca's Remaining Due Process Allegation (Count 3)

Next, the Court considers the viability of Fonseca's only remaining due process claim, which is brought against Nelson in his individual capacity.  Fonseca claims that Nelson's actions violated his liberty interests under the Fourteenth Amendment due process clause because they caused authorities to incarcerate him "for approximately 301 days depriving him of his freedom, earnings, and the love, affection, and memories of his young daughter" (Doc. 2, Ct. 3, ¶ 33).  According to Nelson, Fonseca's claim that his due process rights were violated "is foreclosed by the allegation that he was found not guilty" (Doc. 34, p. 5).

The Court has already explained that Nelson is entitled to absolute prosecutorial immunity from liability for all conduct alleged in Count 3, except making false statements to the press.  The question the Court must confront is whether Fonseca has sufficiently pled a causal connection between Nelson's false statements and his loss of liberty.  In making this determination, the District Court accepts as true all well-pled factual allegations and draws all reasonable inferences in Fonseca's favor.

Fonseca claims that Nelson's statement to the press that he "wouldn't have filed the murder charges 'if I didn't think I had a case'" was intended to influence the jury pool by suggesting that Fonseca was guilty.  According to Fonseca, the statement contributed to his incarceration from the time of his voluntary surrender through his acquittal at trial.  This position is unavailing.  Even

---

immunity depends on 'the source of the duty the employee is charged with breaching.'"  **96 F.3d at 1048–49 (quoting *Currie v. Lao*, 592 N.E.2d 977, 980 (Ill. 1992)).**  However, Fonseca's claims against Nelson in his individual capacity clearly allege that Nelson was not acting under a duty imposed by his office when he lied under oath and made false statements to the press.

if Nelson intended to affect the attitudes of potential jurors, the statements cannot be causally connected to any deprivation of liberty. Obviously, a statement aimed at biasing juror attitudes can have no effect on a defendant's liberty interest prior to trial. The statement at issue can therefore not be a cause of Fonseca's incarceration during the period between his voluntary surrender and the conclusion of his trial. And because Fonseca was found not guilty, there was no further deprivation of his liberty. In other words, any harm Nelson may have intended by his statements never came to fruition: the jury did not accept the prosecution's theory of guilt and set Fonseca free. The deprivation of Fonseca's liberty between his voluntary surrender and his acquittal is not attributable to the statements in question.

Under the facts alleged by Fonseca, no possible causal connection between Nelson's statements and the restraint of Fonseca's liberty. Accordingly, the due process claim against Nelson in his individual capacity (Count 3) must be dismissed.

## H.  Conclusion

For the reasons thoroughly explained above, the Court hereby **GRANTS IN PART AND DENIES IN PART** Nelson's motion to dismiss (Doc. 33). Nelson's motion is **GRANTED** insofar as the Court finds him absolutely immune from the allegations in Counts 1, 2, 4, 5, 6, and 9. Accordingly, these claims against Nelson are **DISMISSED with prejudice**.

Additionally, Nelson is entitled to absolute immunity with respect to the claim in Count 3 that he fabricated witness testimony, and that claim is **DISMISSED with prejudice**. Nelson is not entitled to absolute immunity with respect to the allegations in Count 3 relating to media statements, but he is, however, entitled to the protections of the Eleventh Amendment for these allegations, to the extent they are brought against him in his official capacity. Accordingly, the remaining Count 3 claims against Nelson **in his official capacity** are **DISMISSED with**

**prejudice**.  That leaves the Count 3 claim against Nelson in his individual capacity, which involves Nelson's media statements.  This claim is **DISMISSED without prejudice** due to Fonseca's failure to adequately plead a causal connection between the alleged conduct and any restraint of his liberty.

With respect to Counts 7 and 8, the Court **GRANTS** Nelson's motion to the extent that the Eleventh Amendment shields him from liability in his official capacity.  As a result, Fonseca's claims against Nelson **in his official capacity** in Counts 7 and 8 are **DISMISSED with prejudice**.  However, Fonseca's claims in Counts 7 and 8 against Nelson in his individual capacity are not protected by sovereign immunity.

Additionally, Nelson is not entitled to absolute immunity from the allegations in Count 7 that he intentionally inflicted emotional distress by making false statements to the media and lying under oath.  Nelson's motion is **DENIED** insofar as the claims involving these particular allegations remain pending against Nelson in his individual capacity.  But Nelson is absolutely immune from liability for any and all other conduct alleged in Count 7.  Therefore, the motion is **GRANTED** with respect to these claims, which are **DISMISSED with prejudice.**

The Court also **DENIES** Nelson's motion insofar as he is not entitled to absolute immunity for the defamation claim in Count 8.  As such, this claim remains pending against Nelson in his individual capacity.

Finally, Nelson's motion is **DENIED** to the extent that the Court finds that his statements to the media are not absolutely privileged communications.

While all claims against all other Defendants remain pending at this time, Fonseca's only remaining claims against Nelson are:

> ● Count 7's allegation that Nelson, in his individual capacity, intentionally inflicted emotional distress by (a) making false statements to the media and (b) lying under oath.

- Count 8's allegation that Nelson, in his individual capacity, made defamatory statements about Fonseca to the press.

Due to the rulings above, the Court **DENIES AS MOOT** Nelson's motion to stay

discovery (Doc. 63) and Nelson's motion for leave to file a supplemental response (Doc. 75).

**IT IS SO ORDERED.**

**DATED this 12th day of January 2009.**

**s/ Michael J. Reagan**
**MICHAEL J. REAGAN**
**United States District Judge**